UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GONZALO ALEJO AMEZCUA, | CASE NO. 2:26-cv-00820-LK |
| Petitioner, | ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| BRUCE SCOTT et al., | |
| Respondents. | |

This matter comes before the Court on Petitioner Gonzalo Alejo Amezcua's Amended Petition for Writ of Habeas Corpus. Dkt. No. 21. For the reasons stated below, the Court grants the petition.[1]

## I.    BACKGROUND

Alejo Amezcua is a native and citizen of Mexico. Dkt. No. 27 at 2. He adjusted his status to lawful permanent resident in 1989. *Id.* On September 6, 2022, he was convicted of violating California Penal Code § 288(b)(1), Forcible Lewd Act Upon a Child Under 14, and sentenced to

---

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized by statute").

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 1

5 years of imprisonment. *Id*. On August 2, 2024, U.S. Immigration and Customs Enforcement ("ICE") took Alejo Amezcua into custody from San Quentin Prison in California and transferred him to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 27 at 2. He has remained in the custody of the Department of Homeland Security since August 2, 2024. Dkt. No. 21 at 4.

On August 12, 2024, Alejo Amezcua was served with a Notice to Appear ("NTA") charging him with removability under Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii); 8 U.S.C. § 1227(a)(2)(A)(iii) (aggravated felony). Dkt. No. 27 at 2; *see also* Dkt. No. 28-3 (the NTA). Thereafter, he requested and was granted multiple continuances of his removal proceedings in Tacoma Immigration Court. Dkt. No. 27 at 2–3. He also filed a Form I-485 Application to Register Permanent Residence or Adjust Status. *Id.* at 3. On September 24, 2025, an immigration judge ("IJ") denied Alejo Amezcua's application to adjust his status and ordered him removed to Mexico; Alejo Amezcua has appealed that decision. *Id.* at 3–4; Dkt. No. 28-4. Alejo Amezcua's appeal of the denial of his application to adjust his status remains pending. Dkt. No. 27 at 3–4.

On February 16, 2026, Alejo Amezcua requested a bond hearing. Dkt. No. 27 at 4. A bond hearing was held on February 25, 2026, and an IJ denied bond, finding that Alejo Amezcua's detention is mandatory under Section 236(c) of the INA (8 U.S.C. § 1226(c)). *Id.*; *see also* Dkt. No. 28-5 at 2. Both parties waived appeal of that decision. Dkt. No. 27 at 4.

On March 11, 2026, Alejo Amezcua filed his habeas petition. Dkt. No. 4. Respondent filed a return, Dkt. No. 7, and Alejo Amezcua filed a traverse and a motion to appoint counsel, Dkt. Nos. 12, 13. The Court referred the motion to appoint counsel to the Federal Public Defender, Dkt. No. 15, and after that office declined to accept the matter, Dkt. No. 16, the Court referred the matter to the Northwest Immigrant Rights Project ("NWIRP") for review, Dkt. No. 17. Attorneys

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 2

from NWIRP subsequently appeared on Alejo Amezcua's behalf, Dkt. Nos. 19, 20, and filed an amended petition, Dkt. No. 21. Respondents subsequently filed an amended return, Dkt. No. 26, and Alejo Amezcua filed a traverse, Dkt. No. 29. The matter is now ripe for review.

## II.    DISCUSSION

Alejo Amezcua argues that his lengthy detention without an individualized custody decision violates his due process rights. Dkt. No. 21 at 2. He seeks release "unless Respondents hold a custody hearing before an immigration judge within 14 days." *Id.* at 19. He also requests that at the hearing, "the government must establish by clear and convincing evidence that [he] presents a risk of flight or danger and that no alternative to detention can mitigate any risk that his release would present." *Id.* at 19–20. Respondents[2] contend that Alejo Amezcua's detention is statutorily mandated, he has already received a bond hearing, and his continued detention does not violate the INA or Fifth Amendment. Dkt. No. 26 at 1.

## A.    Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi*, 542 U.S. at 525 (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing

---

[2] Although Bruce Scott has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Hamdi v. Rumsfeld*, 542 U.S. 507, 535 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). The Supreme Court has held that federal courts have jurisdiction to review a constitutional challenge to a noncitizen's detention under § 1226(c). *See Demore v. Kim*, 538 U.S. 510, 517 (2003).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also Demore*, 538 U.S. at 523 (recognizing that Fifth Amendment due process protections extend to deportation proceedings but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B.    Alejo Amezcua Is Entitled to Habeas Relief**

1.    Section 1226(c) Authorizes Detention

The parties agree that Alejo Amezcua is detained under 8 U.S.C. § 1226(c). Dkt. No. 21 at 2 (amended petition stating, "Petitioner concedes he is likely subject to mandatory detention under 8 USC § 1226(c) due to his criminal conviction."); Dkt. No. 26 at 1 (Respondents arguing that Alejo Amezcua "is subject to mandatory detention under 8 U.S.C. § 1226(c) during his ongoing removal proceedings"); Dkt. No. 29 at 2 (Alejo Amezcua's reply stating that he "does not dispute that he falls under the provision at § 1226(c)"). Section 1226 of title 8 authorizes the government to detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) ("Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] pending

their removal."). As the Supreme Court instructed in *Jennings*, "Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen]" pending a removal decision, and "'may release' a[] [noncitizen] detained under § 1226(a) 'on bond . . . or conditional parole.'" 583 U.S. at 288 (ellipses in original) (quoting 8 U.S.C. § 1226(a)).

Under Section 1226(c), however, noncitizens who have committed certain listed offenses or who have been identified by the government as involved in terrorist activities are subject to mandatory detention. 8 U.S.C. § 1226(c)(1)(A)–(E).[3] The Supreme Court's decisions in *Demore* and *Jennings* addressed the meaning of Section 1226(c) as it relates to bond hearings.

In *Demore*, a noncitizen who had been a lawful permanent resident for 10 years (Kim) was detained under Section 1226(c) after he was convicted of first-degree burglary and "petty theft with priors" in California. 538 U.S. at 513. The Immigration and Naturalization Service ("INS") charged him with being deportable from the United States in light of these convictions and detained him pending his removal hearing. *Id.* After roughly six months of detention, Kim filed a habeas corpus action arguing that his detention "violated due process because the INS had made no determination that he posed either a danger to society or a flight risk." *Id.* at 513–14. The Supreme Court reversed lower court decisions holding that Kim was entitled to a bond hearing, emphasizing that "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 521 (quoting *Mathews v. Diaz,* 426 U.S. 67, 79–80 (1976)). It held that Congress—"justifiably concerned that deportable criminal [noncitizens] who are not detained continue to engage in crime and fail to appear for their removal hearings"—"may require that persons such as [Kim] be detained for the

---

[3] Section 1226(c) was amended on January 29, 2025, but those amendments are irrelevant to this case. *See* 139 Stat. 3 (2025).

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 5

brief period necessary for their removal proceedings." *Id.* at 513; *see also id.* at 528 ("[I]n adopting § 1226(c), Congress had before it evidence suggesting that permitting discretionary release of [noncitizens] pending their removal hearings would lead to large numbers of deportable criminal [noncitizens] skipping their hearings and remaining at large in the United States unlawfully."). In response to a dissent "suggesti[ng] that [noncitizens] are entitled to an immediate hearing," the Court pointed to its holding in *Zadvydas*, which "permit[ed] [noncitizens] to be detained for several months prior to such a hearing." *Id.* at 529 n.11.

The Supreme Court's decision in *Jennings* expanded upon the Court's analysis of Section 1226(c). *Jennings* involved a class of noncitizens who were detained under Sections 1225(b), 1226(a), or 1226(c) pending completion of removal proceedings and who had been detained more than six months without a bond hearing. 583 U.S. at 290. The Ninth Circuit "construed §§ 1225(b) and 1226(c) as imposing an implicit 6-month time limit on a[ noncitizen]'s detention under these sections," and held that a noncitizen "must be given a bond hearing every six months and that detention beyond the initial 6-month period is permitted only if the Government proves by clear and convincing evidence that further detention is justified." *Id.* at 291–92. The Supreme Court reversed, holding that "subject only to express exceptions, §§ 1225(b) and 1226(c) authorize detention until the end of applicable proceedings," and that there was no justification for any of the procedural requirements that the Ninth Circuit imposed "without any arguable statutory foundation." *Id.* at 296–97. With respect to Section 1226(c) in particular, the Court emphasized that "by allowing [noncitizens] to be released 'only if' the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that [noncitizens] detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute"—and the statutory text made clear that detention "*must* continue 'pending a decision on whether the [noncitizen] is to be removed from the United States.'" *Id.* at

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 6

303 (quoting 8 U.S.C. § 1226(a)); *see also id.* at 304 ("By expressly stating that the covered [noncitizens] may be released 'only if' certain conditions are met, . . . the statute expressly and unequivocally imposes an affirmative *prohibition* on releasing detained [noncitizens] under any other conditions.").

Accordingly, noncitizens detained under Section 1226(c) are not statutorily eligible for release on bond. *See Avilez v. Garland*, 69 F.4th 525, 535–36 (9th Cir. 2023) (explaining that "noncitizens subject to mandatory detention under Subsection C are not statutorily eligible for release on bond during the judicial phase of the proceedings, except under the narrow circumstances defined by § 1226(c)(2)."). Alejo Amezcua is therefore not entitled to release on statutory grounds, and the Court focuses on his due process challenge to his detention.

2.   Continued Detention Without an Individualized Custody Hearing Violates Alejo Amezcua's Due Process Rights

Even if a petitioner's continued detention is statutorily permitted under 8 U.S.C. § 1226(c), it must also comport with due process. *See Gomez v. ICE Field Off. Dir.*, No. 2:25-cv-02242-TL-TLF, 2026 WL 449536, at *3 (W.D. Wash. Jan. 27. 2026), *report and recommendation adopted*, 2026 WL 447409 (W.D. Wash. Feb. 17, 2026). Alejo Amezcua contends that his detention has been prolonged and "will be even more prolonged based upon the lengthy period of delays in resolving BIA appeals." Dkt. No. 21 at 15. Respondents counter that Alejo Amezcua's detention "is reasonable and constitutional." Dkt. No. 26 at 7.

The Ninth Circuit has declined to rule on whether due process requires a bond hearing for a noncitizen detained under § 1226(c). *Avilez*, 69 F.4th at 538. However, it has observed that after the Supreme Court's decision in *Jennings*, "it remains undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201, 1203 (9th Cir. 2022). The Supreme Court recently granted

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 7

certiorari in *Genalo v. Black* to determine whether there is a point at which a noncitizen's detention under 8 U.S.C. § 1226(c) becomes "unreasonably prolonged" such that due process requires a bond hearing, and if so, what burden applies. 103 F.4th 133 (2d Cir. 2024), *cert granted*, 25-886, 2026 WL 1718025 (June 15, 2026). However, the Supreme Court has not issued a decision, and none is expected this term.

The circuit courts that have addressed the issue post-*Jennings* are split. In 2021, the First Circuit rejected the contention that "all persons detained under section 1226(c) have a constitutional right to a hearing concerning the reasonableness of their continued detention after they have been detained longer than six months," but acknowledged "that the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention under section 1226(c)." *Reid v. Donelan*, 17 F.4th 1, 7 (1st Cir. 2021) (citation modified). Similarly, in *German Santos v. Warden Pike County Correctional Facility*, the Third Circuit "explicitly declined to adopt a presumption of reasonableness or unreasonableness of any duration," instead imposing a "highly fact-specific inquiry" that considers "the duration of detention" along with "all the other circumstances," "whether the detention is likely to continue," "the reasons for the delay, such as a detainee's request for continuances," and "whether the [noncitizen's] conditions of confinement are meaningfully different from criminal punishment." 965 F.3d 203, 210–11 (3d Cir. 2020) (citation modified). And in *Black v. Decker*, the Second Circuit joined the First and Third Circuits "in rejecting a bright-line constitutional rule requiring a bond hearing after six months of detention—or after any fixed period of detention—in the context of a Congressional mandate, in the immigration context, to detain." 103 F.4th 133, 150 (2d Cir. 2024). Instead, the court held that due process challenges to prolonged detention under section 1226(c) should be reviewed under the *Mathews v. Eldridge* framework, as it is a "flexible test" that "takes account of individual circumstances" and "comports with the Supreme Court's guidance in *Jennings* that 'due process

is flexible,' . . . and . . . 'calls for such procedural protections as the particular situation demands.'" *Id.* at 148 (quoting *Jennings*, 583 U.S. at 314 (other citations and quotation marks omitted)).

In contrast, the Eighth Circuit held that Supreme Court precedent "leave[s] no room for a multi-factor "reasonableness' test." *Banyee v. Garland*, 115 F.4th 928, 933 (8th Cir. 2024). In its view, "*Zadvydas* and *Demore* have already done whatever balancing is necessary," permitting the detention of a noncitizen "for as long as deportation proceedings are still '*pending.*'" *Id.* (quoting *Demore*, 538 U.S. at 527 and quoting with approval *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) for the proposition that a noncitizen detained under Section 1226(c) "has the keys in his pocket" and can "end[] his detention immediately" by "withdraw[ing] his defense . . . and return[ing] to his native land").

This Court joins the First, Second, and Third Circuits in rejecting a bright-line rule in this context. Consistent with the Ninth Circuit's expression of "grave doubt[] that any statute that allows for arbitrary prolonged detention without any process is constitutional," *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018), though, the Court also rejects the proposition that detention is permissible, no matter how prolonged, for as long as deportation proceedings are still pending. Courts in this District apply an individualized test known as the "*Martinez* test" to determine whether a noncitizen's prolonged mandatory detention under 1226(c) without a bond hearing[4] violates due process. *Herrera v. Mayorkas*, No. C24-1933-JNW-MLP, 2025 WL 2382093, at *5 (W.D. Wash. May 19, 2025), *report and recommendation adopted*, 2025 WL 2380669 (W.D. Wash. Aug. 15, 2025) (citing *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019

---

[4] Neither party contends that the bond hearing provided to Alejo Amezcua on February 25, 2026 was constitutionally sufficient. The IJ merely concluded that bond was not warranted because Section 1226(c) mandates detention; the IJ could not entertain due process concerns because "the agency generally lacks jurisdiction to resolve constitutional issues." *Flores v. Garland*, No. 19-72559, 2022 WL 501360, at *2 (9th Cir. Feb. 18, 2022) (citing *Matter of C-*, 20 I. & N. Dec. 529, 532 (B.I.A. 1992)).

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 9

WL 5968089, at *8–9 n.8 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019)).

Alejo Amezcua argues that "[w]hile it has become customary for courts in this District to apply the *Martinez* test, which incorporates factors on a noncitizen's past criminal conduct, . . . the appropriate test is *Banda*," which does not consider past criminal conduct. Dkt. No. 21 at 11 n.1 (citing *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019)). He contends that the *Martinez* test's consideration of "the nature of the crimes the petitioner committed," *Martinez*, 2019 WL 5968089, at *7, "is not relevant in assessing whether [the] [p]etitioner's continued detention without a bond hearing violates due process." Dkt. No. 21 at 11 n.1 (contending that his "past criminal conduct is relevant to determine whether he is a danger to the community *in a bond hearing*").[5] Although Respondents cite the *Banda* test, they list and apply factors applicable to Alejo Amezcua's criminal conviction from the *Martinez* test. Dkt. No. 26 at 7; *see also* Dkt. No. 29 at 5 (Alejo Amezcua asserting in his reply that Respondents have "create[d] their own multi-factor test to support their position").

As other courts in this district have done, the Court finds that the *Martinez* test is applicable here. *See, e.g.*, *Calderon v. Bostock*, No. 2:24-cv-01619-MJP-GJL, 2025 WL 879718, at *3 (W.D. Wash. Mar. 21, 2025) (noting that "consideration of criminal history has solid grounding in case law" (citation modified)); *Barrie v. Scott*, No. 2:26-cv-00880-TMC, 2026 WL 1213605, at *4–5 & n.5 (W.D. Wash. May 4, 2026) (applying the *Martinez* factors).[6] In particular, the Court considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention;
> (3) whether the detention will exceed the time the petitioner spent in prison for the

---

[5] The *Martinez* test considers the same factors as *Banda* and adds two additional factors: "whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable"; and "the nature of the crimes the petitioner committed." *Martinez*, 2019 WL 5968089, at *9; *see also Banda*, 385 F. Supp. 3d at 1106.

[6] The Court notes that the result would be the same if it applied the tests under *Banda* or *Mathews v. Eldridge*, 424 U.S. 319 (1976).

crime that made him removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.

*Martinez*, 2019 WL 5968089, at *7.

The first factor "is the most important one." *Ashemuke v. ICE Field Office Dir.*, No. 2:23-cv-1592-RSL-MLP, 2024 WL 1683797, at *4 (W.D. Wash. Feb. 29, 2024), *report and recommendation adopted*, 2024 WL 1676681 (W.D. Wash. Apr. 18, 2024). "The longer mandatory detention continues beyond the 'brief' period authorized in *Demore*, the harder it is to justify." *Id.* Alejo Amezcua asserts that his detention of approximately 22 months (now 23 months) is lengthy. Dkt. No. 21 at 11. Respondents counter that "*Demore* itself approved mandatory detention for periods comparable to or exceeding the national average at the time, recognizing that proceedings can legitimately extend due to complexity or the [noncitizen's] own litigation choices." Dkt. No. 26 at 7. The Court takes into account the unusual delay caused by Alejo Amezcua's requested continuances here; disregarding 10 of his 13 months of continuances as delays that he could have avoided with reasonable diligence, the resulting detention period is still over 13 months. Courts have found that similar periods of detention weigh in favor of petitioners. *Maliwat v. Scott*, No. 2:25-cv-00788-TMC, 2025 WL 2256711, at *4 (W.D. Wash. Aug. 7, 2025) (finding that detention for over a year favored petitioner; collecting cases); *Diep v. Wofford*, No. 1:24-CV-01238-SKO (HC), 2025 WL 604744, at *5 (E.D. Cal. Feb. 25, 2025) (finding that due process warranted a bond hearing where petitioner had served approximately 13 months in detention after completing his sentence for several aggravated felonies, including murder); *Sibomana v. LaRose*, No. 22-CV-933-LL-NLS, 2023 WL 3028093, at *4 (S.D. Cal. Apr. 20, 2023) (noting that courts "become extremely wary of permitting continued custody absent a bond hearing" when "detention continues past a year"). This factor favors Alejo Amezcua.

When weighing the second factor, "the likely duration of future detention," a court must consider the "anticipated duration of all removal proceedings including administrative and judicial appeals." *Martinez*, 2019 WL 5968089, at *9. Alejo Amezcua contends that his future detention is likely to be very lengthy because his "BIA appeal has been pending since October 9, 2025, and he has not yet received a briefing schedule or transcript; the appeal is likely to take an additional year to complete." Dkt. No. 21 at 11. Even more delay is expected regardless of the outcome of the BIA appeal, because if the appeal is successful, his case will be remanded to immigration court; if Alejo Amezcua's BIA appeal is unsuccessful, he will file a petition for review with the Ninth Circuit. *Id.* This factor also favors Alejo Amezcua.

The third factor—whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable—weighs in Respondents' favor because the 22 months Alejo Amezcua has spent in detention (even including the 10 months of avoidable delay) does not exceed his 60-month prison term. Dkt. No. 27 at 2.

The fourth factor—the nature of the crimes the petitioner committed—is "indicative of whether the detainee would be a danger to the community or a risk of flight such that a bond hearing would be futile." *Odimara v. Bostock*, No. 2:24-CV-572-JHC-GJL, 2024 WL 3862256, at *7 (W.D. Wash. July 12, 2024), *report and recommendation adopted*, 2024 WL 3859703 (W.D. Wash. Aug. 19, 2024). Alejo Amezcua "acknowledges that if the *Martinez* test is applied as opposed to the *Banda* test, then the court will review the nature of the crime that he committed, and that this factor may weigh against him." Dkt. No. 21 at 12. Respondents argue that Alejo Amezcua "has a serious criminal record: a conviction for California Penal Code § 288(b)(1), an aggravated felony involving sexual abuse of a minor by force, which Congress specifically targeted in enacting 8 U.S.C. § 1226(c) because of the heightened risk of recidivism and flight." Dkt. No. 26 at 8. This factor favors Respondents because Alejo Amezcua was convicted of a

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 12

serious felony. Dkt. No. 27 at 2; *see Gomez*, 2026 WL 449536, at *5 (finding that this factor weighed in the government's favor when the petitioner had been convicted of a serious felony).

As for the fifth factor—the conditions of detention—Alejo Amezcua states that he has diabetes, and although he takes medicine for it every day and visits the medical center once a month for check-ins, his feet are "very swollen," causing him to fear that he will lose his feet. Dkt. No. 22 at 3. Alejo Amezcua also has trouble sleeping at the detention center after he woke up one night to "another detainee touching [his] private areas and kissing [him]." *Id.* Even though that detainee was subsequently moved, Alejo Amezcua still has difficulty sleeping because he is "scared that it will happen again," and his request for medication to help him sleep was denied. *Id.* He is allowed to go outside for only one hour a day, and the only recreational activities provided are religious services on Sundays. *Id.* Respondents do not contest these assertions. *See generally* Dkt. No. 26. This factor weighs in favor of Alejo Amezcua.

Respondents contend that the sixth factor (petitioner-caused delays), weighs "heavily in the government's favor" because Alejo Amezcua "requested or consented to nine continuances and filed a late Form I-485 application for adjustment of status, all of which extended the timeline." Dkt. No. 26 at 7–8. Alejo Amezcua responds that he submitted his Form I-485 "on time," and it "was accepted and adjudicated by the IJ." Dkt. No. 29 at 7. Alejo Amezcua also states that he "had to ask the IJ for more time to prepare for [his] case" because he was proceeding pro se, he "depended on [his] daughter to send [him] the documents [he] needed," and his daughter "was not able to quickly send [him] the documents[.]" Dkt. No. 22 at 2. This factor only weighs against a petitioner when he "has 'substantially prolonged his stay by abusing the processes provided[.]" *Hechavarria v. Sessions*, 891 F.3d 49, 56 n.6 (2d Cir. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)). The Court has taken account of the avoidable delay of 10 months caused by Alejo Amezcua's repeated continuances in other factors, Dkt. No. 27 at 2–3, but no party suggests

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 13

that he "abus[ed] the processes provided," *Gomez*, 2026 WL 449536, at *6; indeed, Respondents do not contest his explanation that his reliance on his daughter to assist him in preparing his documentation caused the delays, *see generally* Dkt. No. 26. This factor is therefore neutral. *Id.*

The seventh factor (government-caused delays) is neutral because Alejo Amezcua concedes that "[t]he government did not cause delays." Dkt. No. 29 at 7.

Finally, to evaluate the eighth factor—the likelihood that the removal proceedings will result in a final order of removal—the Court "considers whether the noncitizen has asserted any defenses to removal." *Martinez*, 2019 WL 5968089, at *10. Respondents do not address this factor. *See* Dkt. No. 26 at 7–8. Alejo Amezcua asserts that he "has made a good-faith defense to removal based on adjustment of status." Dkt. No. 21 at 15; *see also* Dkt. No. 28-4 at 3. He has appealed the denial of that relief, and the Court does not have sufficient information to determine whether the appeal is nonfrivolous or whether he ultimately will prevail. Consequently, this factor is neutral.

In sum, the Court finds that the first, second, and fifth factors weigh in Alejo Amezcua's favor. The third and fourth factors weigh in Respondents' favor. The sixth, seventh, and eighth factors are neutral. Given that the first factor is the most important and considering the length of detention Alejo Amezcua has experienced and will continue to experience, the Court finds that due process requires a bond hearing "to ensure that the government's asserted justification for physical confinement outweighs [Alejo Amezcua's] constitutionally protected interest in avoiding physical restraint." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (internal quotation marks and citation omitted).

Turning to the timing and parameters of the bond hearing, Alejo Amezcua requests that the Court "order [his] release unless Respondents hold a custody hearing before an immigration judge within 14 days" and require that "[a]t that hearing, the government must establish by clear and convincing evidence that Petitioner presents a risk of flight or danger and that no alternative to

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 14

detention can mitigate any risk that his release would present." Dkt. No. 21 at 19–20. Respondents do not specifically respond to those requests for relief, other than to argue that no bond hearing is required. *See generally* Dkt. No. 26. Accordingly, the Court grants Alejo Amezcua's request for a bond hearing within 14 days at which the government is held to a clear and convincing evidence standard of proof. *See, e.g.*, *Barrie*, 2026 WL 1213605, at *7.

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS Alejo Amezcua's amended petition for a writ of habeas corpus, Dkt. No. 21, and ORDERS as follows:

1.      Respondents must provide Alejo Amezcua with a bond hearing before an immigration judge within 14 days of the date of this Order unless Alejo Amezcua requests an extension of that deadline; any extensions successfully requested by Alejo Amezcua toll the 14-day period. Respondents must ensure that the bond hearing is recorded.

2.      At the hearing, the government will bear the burden of proving by clear and convincing evidence that Alejo Amezcua is a danger to the community or a flight risk.

3.      If a bond hearing is not provided within 14 days of the date of this Order and Alejo Amezcua has not requested an extension of that deadline, Alejo Amezcua shall be released from ICE custody within 24 hours on appropriate conditions of supervision, taking into account his ability to pay a bond.

4.      Respondents must file a Status Report with the Court either confirming that Alejo Amezcua received a bond hearing—and the results of that hearing—or otherwise confirming his release by July 23, 2026.

5.      Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 428 (3d Cir. 2026) (the Equal Access to Justice Act authorizes award of attorney's fees to

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 15

petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *see also Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (reasoning that an award of fees under EAJA was not necessarily foreclosed for a habeas petition brought by "a nonresident [noncitizen]" in the immigration context). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 2nd day of July, 2026.

Lauren King
United States District Judge

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 16